# TROTTER, Respondent, v. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, January 22, 1907.

1. **PRACTICE: Acquiescing in Error: Waiver.** Where instructions requested by the appellant and refused by the trial court showed the appellant objected to the theory on which the case was tried, the appellant could not be said to have acquiesced in an erroneous theory adopted by the trial court and waived his right to object to it by asking an instruction as favorable as possible to him under that theory.

2. **Res Ipsa Loquitur: Limits of Rule: Street Car Passengers.** The doctrine of *res ipsa loquitur* is applied in an action for damages to a passenger on a street car or other vehicle in the control of the defendant, only when the accident is one that according to ordinary experience does not happen if the vehicle is operated with proper care.

3. ———: ———: ———: **Burden of Proof.** In an action for damages to plaintiff while a passenger on defendant's car caused by an explosion such as to frighten the passengers and cause plaintiff to be crushed in the panic which followed, where the evidence was conflicting as to whether the explosion was of ordinary or extraordinary intensity, and it was shown that explosions of a harmless character were of common occurrence upon cars operated by electricity, it was error to instruct the jury that proof of the explosion such as to cause a panic among the passengers and consequent injury to plaintiff, placed the burden upon the defendant to show that the explosion happened without its negligence.

4. ———: **Inferences: Burden of Proof.** Where the essential fact in issue is not directly proved but must be inferred from other facts, the law requires the facts from which the inference is drawn to be proved and does not allow them to be presumed. The inference of negligence in a carrier of passengers may be inferred from proof of an unusual explosion, but that the explosion was unusual can not be inferred from a panic of the passengers, but must be proved directly.

5. ———: **Practice: Instruction: Curing Error.** Where the burden was erroneously placed upon defendant by an improper application of the doctrine of *res ipsa loquitur*, the error was not cured by an instruction for defendant correctly stating the doctrine, because the burden was cast upon the defendant before the plaintiff made out a *prima facie* case.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED.

*Jefferson Chandler* and *T. M. Pierce* for appellant.

(1)   The court erred in permitting evidence to be introduced, over the objection of the defendant, and holding that the plaintiff's petition stated facts sufficient to constitute a cause of action.   There is no allegation in the petition that the alleged explosions, flames or smoke were unusual, extraordinary and not incidental and unnecessary to the operation of electric cars, nor did the petition allege that the cause of fright and terror was sufficient to have aroused apprehension of danger and fear for safety in the mind of a person of extraordinary care and prudence.   Railroad v. Butler, 135 Ala. 388; Kleiber v. Railroad, 107 Mo. 247; Saxton v. Railroad, 98 Mo. App. 504.   (2)   The explanation on the part of defendant as to the cause of the explosion upon the car clearly showed that they were incident to operation, not unusual and that the defendant was not guilty of any negligence in the appliances and equipment on the car.   Railroad v. Mounce's Admr., 90 S. W. 957; Henry v. Railroad, 76 Mo. 288; Powell v. Railroad, 76 Mo. 83; Quinn v. Railway, 7 Pa. Sup. 19; Wade v. Railroad, 51 S. C. 296; Furber v. Bolt & Nut Co., 185 Mo. 310.   (3)   The court erred in instructing the jury over the objection of the defendant.     (a)   Because this instruction was broader than the pleadings.   The theory of the petition was that the plaintiff was injured on account of the negligence  of  the  defendant's  servants. This instruction permitted a recovery if there were defects in the car or machinery.   Politowitz v. Telephone Co., 90 S. W. 1031; Lowenstein v. Railway, 110 Mo. App. 686; Waldhier v. Railroad, 71 Mo. 514; Gurley v. Railroad, 93 Mo. 447.   (b)   This instruction was vicious be-

cause it permitted the jury to presume negligence merely by the proof of the fuse blowing out. Cassady v. Railroad, 68 N. E. 10; Nellis on Street Railway Accident Law, p. 67.

*N. S. Brown* and *J. S. McIntyre* for respondent.

(1) The petition states a cause of action, and is undoubtedly good after verdict. Sawyer v. Railroad, 156 Mo. 468; Heman v. Allen, 156 Mo. 534; Oglesby v. Railroad, 150 Mo. 137; Cobb v. Lindell, 149 Mo. 135; Green v. Assn., 79 Mo. App. 179; Malone v. Casualty Co., 71 Mo. App. 1. (2) Plaintiff made a prima facie case by showing herself free from blame, and that the accident occurred. The burden was then upon defendant to show to the satisfaction of the jury, that the accident was not the result of a want of that care and skill which the law imposes upon a carrier of passengers. Redmon v. Railroad, 185 Mo. 1; Brod v. Transit Co., 115 Mo. App. 202; Chicago Traction Co. v. Newmiller, 215 Ill. 383; German v. Transit Co., 95 N. Y. Supp. 112; Firebaugh v. Electric Co. (Wash. 1905), 82 Pac. 579.

GOODE, J.—Plaintiff says she was injured on the evening of June 22, 1904, in a panic among the passengers on one of the defendant's trolley cars. She was received as a passenger at Lindell boulevard station. The car was crowded with passengers, some of whom could not find seats and were standing in the aisles and on the front and rear platforms. Plaintiff says that after the car had proceeded a short distance from the station her attention was attracted by flames and smoke underneath its floor and about its sides. As the car could not be propelled in the usual manner, the motorman went from the front to the rear platform and started the car forward. It did not run freely and was run backwards and forwards a short distance for a while, and finally moved a block further on its way toward town. The

passengers, including plaintiff, are alleged to have become so frightened that many of them tried to get off the car. The averments are that they requested the conductor to allow them to get off, but he refused to do so; that while the car was standing still another car came up behind and the motorman of said other car came on the platform of the car plaintiff was on and attempted to start it. Immediately following this attempt, says the petition, there was a loud noise and an explosion from the machinery and mechanism of said car, caused by the negligence of defendant and said noise and explosion were followed by smoke and flames in, around and through said car; the noise and explosion greatly frightened plaintiff and created a panic among the other passengers on said car and caused such other passengers and plaintiff to endeavor to escape therefrom, and while plaintiff was endeavoring to escape, other passengers, in their efforts to escape, knocked and crushed plaintiff against the seat and floor of the car greatly injuring her left knee and leg. The second count of the petition is exactly like the first one, except the specifications of negligence; which are the attempt of defendant's servants to start the car plaintiff was on, or allowing the motorman of the car behind to start it when noises and explosions were occurring and the refusal of defendant's servants to hold the car still and allow plaintiff and the other passengers to get off. The answer filed was a general denial and an averment that plaintiff was safe in her seat at the time of the alleged occurrence; that the noises and explosions described in the petition, if any occurred, were harmless and were in nowise adequate to cause peril to plaintiff; that whatever injury she received was self-inflicted and due to her own carelessness in leaving her seat without occasion or justification and exciting a needless confusion on the car, and not because of any fault or negligence on the part of defendant. Testimony was introduced by plaintiff tending to prove that after

she got aboard, the car traveled a short distance and then became unmanageable; that the motorman moved it backwards and forward for a while, but made no great headway with it; that the motorman of another car got on it and attempted to start it. Explosions and flashes of light followed the attempt to start the car; but as to whence they came or the intensity and alarming nature of them, the evidence is not consistent. Some testimony conduces to show the explosions came from beneath the car; other testimony that they proceeded from the controller box on the rear end, and still other testimony that they were due to the burning out of the fuse or circuit-breaker at the top of the car. It seems there was one explosion in the front of the car and several in the rear. Much of the evidence goes to show that these explosions and the light and flames which accompanied them, were of an unusual and terrifying character and produced a panic among the passengers, who struggled to get off and in so doing pressed plaintiff against a seat and injured her. Some testimony tends to show the explosions and flashes were, as said, due to the blowing out of the circuit-breaker, or fuse, and were not of an unusual character, but such as are of common occurrence, necessarily incident to the operation of electric cars, and productive of no alarm to the passengers. It may be that the evidence of the latter sort was weak in comparison with that tending to show the explosions were violent and extraordinary; but of this matter the jury was to judge. The court gave this instruction at plaintiff's request and against defendant's objection:

"The court instructs the jury that if you believe and find from the evidence that on or about the 22d day of June, 1904, the plaintiff was a passenger on one of defendant's cars, and while said plaintiff was a passenger thereon, an explosion occurred in and from the machinery of said car, by reason of which a panic was caused among the passengers in said car, and the plaintiff, with-

out fault or negligence on her part, and while exercising ordinary care under the circumstances, received the injuries of which she complains, then it rests upon the defendant to prove that said car and the machinery by which it was operated was reasonably safe and sound, so far as human skill, diligence and foresight could provide; and that said explosion was caused by inevitable accident, or defects in said car and machinery, that could not have been seen, detected or known to the defendant, its agents or servants, by the exercise of the highest human skill, diligence and foresight. By the highest human skill, diligence and foresight is meant such skill, diligence and foresight as is exercised by a very cautious person under like circumstances."

For the defendant the court instructed that if the jury found the explosion was not due to negligence on the part of defendant or its servants, but arose from some cause which the skill and foresight of very careful persons engaged in the same or similar occupation, would not have discovered or foreseen, defendant was not guilty of negligence; but that the burden of proof was on defendant to show the explosion, accompanied with smoke and flames, was not due to its negligence. The court further instructed the jury that if they found the explosion, smoke and flames were not dangerous, and that the danger was only apparent, no verdict could be found for plaintiff, unless the jury believed from the evidence that the apparent danger was so imminent and threatening as to cause a person of ordinary prudence, under the circumstances, to apprehend danger and to change his or her position on the car from such apprehension; that if the jury found the explosion was not so great as to cause a person of average intelligence, as shown by the evidence, to try to escape from the danger or to change his position in consequence thereof, the verdict should be for the defendant. The verdict returned

was for $2,250 in plaintiff's favor, and judgment having been entered for that sum, defendant appealed.

1. The petition is said to state no act of negligence which was covered by the instruction given for plaintiff or sufficient to uphold the verdict; but plaintiff's counsel maintain the allegations are good after verdict and that they tendered issues regarding acts of negligence fairly within the scope of plaintiff's instructions. The main instruction given at plaintiff's request stated only by implication the ground on which she could have a verdict. Its special purpose was to advise the jury as to when the burden of proof shifted to defendant. It proceeded on the theory of law that if an explosion occurred in the machinery of the car and created a panic resulting in injury to plaintiff while she was using care for her safety, the fact of the explosion, under those circumstances, was evidence of negligence, and threw on defendant the duty of exonerating itself. The effect of the charge was to hold defendant answerable to plaintiff unless the explosion, whatever its intensity, was not caused by defendant's failure to do its duty toward providing safe mechanism. We pass over the question of the sufficiency of the petition after verdict, or whether or not it contained averments of negligence on which to base the instruction for plaintiff, because, conceding those points in her favor, we hold the doctrine of the instruction is unsound. It may look like defendant acquiesced in the theory that plaintiff made a prima facie case by proving there was an explosion followed by a panic as a consequence; for one of the instructions given on defendant's request contains the statement that the burden was on it to prove any explosion which may have occurred was not due to its negligence. But other instructions requested by defendant and refused by the court, indicate that defendant opposed this ruling in the first instance; and we think the fair view is that, in requesting instructions which recognized the same theory, de-

fendant's purpose was to present the issues to the jury in a manner as favorable to its defense as was possible under the legal theory which had been adopted by the court; not to consent to the ruling. [Clancy v. R. R., 192 Mo. 615, 91 S. W. 509; Behen v. R. R., 186 Mo. 430, 442, 85 S. W. 346.] Plaintiff's instruction did not discriminate at all between an explosion of the usual and unavoidable sort, due to the burning of a fuse and not likely to throw passengers into a panic, and one of an extraordinary kind. It simply cast on defendant the burden of acquitting itself of blame for any explosion which happened and caused a panic. This was equivalent to holding that evidence of the happening of those two incidents made out plaintiff's case. The doctrine applied was *res ipsa loquitur*, and the inquiry is: Was it applicable to such a state of facts? It is known that small explosions, due to the combustion of fuses and not dangerous, happen on electric cars when they are well constructed and rightly operated. There is testimony of weight that the one on the occasion in question was of this sort; that no panic occurred among the passengers who, at most, were slightly uneasy, but did not leave their seats or positions on the platforms. Now the instruction for plaintiff failed to take notice of this evidence as inadequate, if true, to prove negligence on the part of defendant. The maxim *res ipsa loquitur* is applied in an action for a casualty to a passenger on a street car, or other vehicle in the control of a defendant, only when the accident is one that, according to ordinary experience, does not happen if the vehicle is operated with proper care. The improbability of the event happening under good management is what gives it probative force as evidence of negligence. Some injuries to passengers in vehicles, proclaim negligence on the part of the carrier; or indicate it so strongly as to call on the carrier for an explanation. Collisions of two trains or two street cars, or the overturning of a car, have this ef-

fect, because experience has shown them to be due generally to carelessness. [Clark v. R. R., 127 Mo. 197, 29 S. W. 1013.] But not every casualty to a passenger traveling on a street car or railway train will, in this jurisdiction, constitute evidence of negligence and transfer to the railway company the burden of proof. This is so because casualties will happen in using those modes of conveyance, under the most careful management, and a common carrier of passengers is not held to be an insurer of their safety. It is true a contractual relation exists in such cases; but the carrier does not agree to carry the passengers safely in every contingency, but only in so far as it can be done by using great care. [Dougherty v. R. R., 81 Mo. 325, 330; Och v. R. R., 130 Mo. 27, 51, 31 S. W. 962.] That an accident resulting in injury to a passenger on a street car is not, in Missouri, always evidence from which the conclusion of negligence can be deduced, has been established by carefully considered decisions of the Supreme Court and this court. In Dougherty v. R. R., 9 Mo. App. 478, Judge THOMPSON, after looking into many cases treating of the subject, held that the doctrine of *res ipsa loquitur* is applicable, under proper circumstances, to street car accidents. The reason of the rule as stated in the leading case of Scott v. London, etc., Dock Co., 3 Hurlst. & C. 596, was approved in the opinion. It will be well to quote again this oftquoted passage because it is accepted universally as a sound statement of the principle underlying the rule. "Where the thing is shown to be under the management of defendant or his servants, and the accident is such as, under an ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." All the opinions treating of this subject which have come under our observation insist, as the condition on which the rule will be applied, on the presence of

every fact stated in the foregoing excerpt to be essential to its correct application.    In Dougherty v. R. R. the injury was caused by a jerk of unusual violence due to the sudden starting of the car.    The case went to the Supreme Court, which tribunal approved the decision of this court and Judge THOMPSON's opinion.    The Supreme Court repeated the excerpt from Scott v. Dock Co., and as grounds for controlling the case by the maxim *res ipsa loquitur*, called attention to these facts: The car on which Dougherty was injured was under the exclusive management of the railroad company; its appliances were under the control of the driver; by proper vigilance and management, the car would not have started with the violence shown by the evidence and "under an ordinary course of things" the jerk probably would not have happened if those who had the management of the car had used proper care.    In Bartley v. R. R., 148 Mo. 124, 49 S. W. 840, the accident occurred on a cable car and was alleged to have been caused by the negligent operation of the gripman whereby a jerk or lurch was given to the car with such force as to throw the plaintiff onto the street from the running-board.    The plaintiff's evidence tended to show he was thrown off by a sharp jerk and the jury were instructed that if the car was operated so carelessly as to cause a jerk or lurch and throw him on the ground, he was entitled to recover. In regard to this ruling, the Supreme Court said the testimony for the plaintiff did not show negligence, because it was matter of common knowledge that jerks were common and unavoidable on cable railways, and in order for plaintiff to recover it was not enough to show there was a jerk, without showing it was of uncommon violence.    In answer to the argument that negligence should be imputed to defendant from the accident, the opinion said this contention was untenable; adding the following comment:

"It is not true that jerks do not usually occur in the

running of cable cars, but on the contrary it is a fact that they are unavoidable. It is only in cases where the injury would not occur in the ordinary conduct of such affairs, that negligence is imputed to a defendant. Where, as here, it affirmatively appears, and is proved by common experience as well as by the laws of physics, that the particular thing complained of is unavoidable, there can be no negligence."

A comparison of the Bartley and Dougherty cases, the injury in both having been caused by a sudden movement of a street car, will bring into clear view the principle on which the maxim in question rests and the error of its application in the instruction we are considering. In the Dougherty case the inference of negligence from the sudden jerk of the car was allowed because the testimony showed the jerk was unusually violent; whereas in the Bartley case the inference was rejected because, for aught that appeared, the jerk complained of was ordinary and unavoidable. In the present case, though there was evidence that the alleged explosion which is said to have led to plaintiff's injury, was of extraordinary intensity, there was much evidence to the contrary, and the instruction treated any explosion resulting in a panic as sufficient to make a case against the defendant. If it is argued that the consternation of the passengers shows the explosion was unusual, we answer that it cannot be inferred that the explosion was of extraordinary violence because the passengers were affrighted, and then inferred from this presumed violence, that the defendant was negligent. When an essential fact is not directly proved but must be inferred from other facts, the law requires the facts from which the inference is to be drawn to be proved and does not allow them to be presumed. [Douglass v. Mitchell's Excrs., 11 Casey 443; Bigelow v. Railroad, 48 Mo. App. 368, 372; State v. Lackland, 136 Mo. 26, 32; Starkie, Evidence (10 Am. Ed.), 80.] Such presumptions of fact (properly called

inferences) are not to be piled up indefinitely. Plaintiff's evidence needed to go to the extent of tending to show that the violence of the explosion was sufficient to excite a panic among persons of average intelligence and discretion; and, indeed, this was the view taken by the court in the instructions given for defendant. A id it is adjudged law. [Kleiber v. Railroad, 107 Mo. 240, 17 S. W. 946.] Text-writers and courts generally support the statement of the maxim *res ipsa loquitur* and its limitations contained in the authorities already cited. [6 Thompson, Negligence, sec. 7635; 1 Shear. & Red., Neg. (5 Ed.), sec. 59; Nellis, Street Railways, 571, 577; Schneider v. Railroad, 43 W. Va. 661, 39 L. R. A. 499; Ayers v. Railroad, 156 N. Y. 104; Wilder v. Railroad, 41 N. Y. Supp. 931, 161 N. Y. 665; Halson v. Railroad, 55 N. Y. Supp. 941; Barron v. Iron Works, 202 Pa. St. 274.] A case involving the question under discussion is Cassady v. Old Colony Street Railway, 184 Mass. 156. There plaintiff was injured by the burning out of a fuse in an electric car. The fuse was placed under the seat on which she was sitting. The evidence showed such fuses were used to protect the trolley wires and car motors from excessive currents of electricity. This was accomplished by the fuses melting, with more or less report and flame, when the current of electricity became too great, thereby interrupting the current between the trolley wire and the motors and saving the latter from injury. The evidence showed, too, that in the careful operation of cars properly equipped, the burning out of a fuse would happen occasionally without negligence on the part of any one. Commenting on this testimony the opinion said: "The ordinary burning out of a fuse, therefore, is not prima facie evidence of negligence and if there had been nothing else in this case, the defendant would have been entitled to a verdict." It was said further that the explosion of the fuse would not import negligence on the part of the defendant, but other facts

Trotter v. St. Louis & Sub. Ry. Co.

in proof were held to justify the finding of negligence. We hold the instruction given for plaintiff, which threw on defendant the burden of exculpating itself, and held plaintiff had made out a case by proving the occurrence of an explosion followed by a panic among the passengers, was erroneous.

2. The instructions given for defendant required the jury to find the explosion and flames were of so dangerous and threatening a character as to move a person of ordinary prudence, under the circumstances, to apprehend injury and alarm him into changing his position on the car. It is contended that these instructions cured the fault in the one given for plaintiff. But how could this be so? The error of plaintiff's instruction consisted in casting on defendant the burden of proof before plaintiff had made out a prima facie case. That is to say, defendant was required to exonerate itself before plaintiff had adduced evidence tending to show it was culpable. Defendant's instructions simply stated to the jury that if certain facts were found defendant was not liable. Plaintiff's instruction dealt with the burden of proof and advised the jury erroneously concerning that matter; not stating explicitly what facts were essential to plaintiff's recovery.

The judgment is reversed and the cause remanded. All concur.